Edward and Pamela **REISER,** and Janet **Greenlee, Individually and on behalf of all others similarly situated, Plaintiffs,**

v.

**RESIDENTIAL FUNDING COR-PORATION a/k/a GMAC–RFC, Defendant.**

**No. 03–CV–0619–DRH.**

United States District Court, S.D. Illinois.

Jan. 19, 2005.

Eric G. Calhoun, Lawson, Fields et al., Richard J. Pradarits, Jr., Attorney at Law, Addison, TX, for Plaintiff.

Thomas L. Allen, Roy W. Arnold, Nina M. Faber, Reed Smith, Pittsburgh, PA, Peter J. Kennedy, Reed Smith, Los Angeles, CA, Richard K. Hunsaker, Robert H. Shultz, Jr., James A. Telthorst, Heyl, Royster et al., Edwardsville, IL, for Defendant.

### MEMORANDUM AND ORDER

HERNDON, District Judge.

### I. Introduction, Procedural Background and Facts

On January 6, 2005, the Court held a hearing on Plaintiffs' motion for certification of national class (Doc. 35). During the hearing, the Court asked questions and heard oral argument from both parties. Based on the applicable case law, the parties' briefs, arguments and answers, the Court orally denied Plaintiffs' motion for certification of national class. Based on the reasons stated on the record during oral argument and on the following, the Court denies the motion.

On February 13, 2004, Plaintiffs, individually and on behalf of all others similarly situated, filed a First Amended Complaint against Residential Funding Corporation a/k/a GMAC–RFC ("RFC") for violations of the Illinois Interest Act, 815 ILCS 205/4.1, violations of the Truth in Lending Act, 15 U.S.C. § 1601 et seq. ("TILA"), as amended by the Home Ownership Equity Protection Act. 15 U.S.C. § § 1635, 1639, & 1640 ("HOEPA") violations of the Real Estate Settlement Protection Act, 12 U.S.C. § 2601 et seq. ("RESPA"), Conspiracy, Common Law Fraud and violations of the Illinois Consumer Fraud Act, 815 ILCS 505/1 et seq. (Doc. 23), Plaintiffs allege the second mortgage loans they obtained from Mortgage Capital Resource Corporation ("Mortgage Capital") included illegal and deceptive charges and that RFC, which took assignment of the second mortgage notes, is liable for Mortgage Capital's violations of Illinois law and federal law.

Plaintiffs Edward and Pamela Reiser, a married couple, and Janet Greenlee reside in

Illinois (Doc. 23, ¶¶ 12–13). The Reisers and Greenlee obtained second mortgages from Mortgage Capital (Doc. 23, ¶¶ 60 & 63). The Reisers' second mortgage was for $34,000 and had an interest rate of 13,125% while Greenlee's second mortgage was for was for $35,000 and had an interest rate of 17,25% (Doc. 23, ¶¶ 61 & 63). Both mortgages charged various items as "fees," including origination fees, loan discount fees, processing fees, underwriting fees and document preparation fees, coupled with non bona fide closing costs (Doc. 23, ¶¶ 61 & 63). Plaintiffs describe these loans as "High Loan to Value" loans ("HLTV loans") because they are secured by a second mortgage on residential property where the total outstanding debt on the dwelling often exceeds the fair market value of the property (Doc. 23, ¶ 29).

Each note and mortgage secured by Plaintiffs included provisions that the rights and duties of Mortgage Capital were assignable and that the laws of the state of where the property was located would govern the mortgages (Doc. 23, ¶¶ 33 & 34). Plaintiffs maintain that Mortgage Capital did not maintain its own loan portfolio; rather the loans were pooled and sold to investors either through bulk loan sales or by securitizing the loans into pools of mortgaged-backed securities (Doc. 23, ¶ 35). Plaintiffs contend that Mortgage Capital used Johnson & Payne, PLC. (Mortgage Capital's purported settlement agent) as a tool to funnel fraudulent settlement charges to Mortgage Capital and its officers (Doc. 23, ¶ 69). Plaintiffs further allege that Mortgage Capital, Johnson & Payne, and Kenneth Ketner, CEO of Mortgage Capital, conspired with each other to mislead borrowers and others concerning the kickback arrangement with Johnson & Payne, inflated finder fees and closing charges, and that they deliberately prepared misleading and inaccurate HUD–1 settlement statements (Doc. 23, ¶ 70). Plaintiffs allege that RFC is liable by way of the Home Ownership and Equity Protection Act, 15 U.S.C. § 1641(d).[1]

With regard to the Named Plaintiffs, the amended complaint alleges that on October 30, 1999, the Reisers obtained a twenty-five year second mortgage home equity loan from Mortgage Capital in the principal amount of $34,000.00 and that on November 4, 2024 (the last scheduled payment date), the Reisers will have paid a total of $116,001.00 on the loan including $85,571.00 in interest. The amended complaint further alleges that Greenlee also obtained a twenty-five year second mortgage home equity loan from Mortgage Capital in the principal amount of $35,000.00 and that on November 24, 2004 (the last scheduled payment date), Greenlee will have paid $153,051.00 on the loan and including $121,971.00 in interest.

On May 25, 2004, the Court denied Defendants' motion to dismiss (Doc. 39). In light of the Court's ruling, RFC filed an interlocutory appeal as to the following issues: (1) whether the Illinois Interest Act, 815 ILCS 205/4.1a has not been impliedly repealed and (2) whether Plaintiffs' allegations as to the actions of Mortgage Capital Resources, Johnson and Payne and other persons unrelated to RFC were sufficient to toll the statutes of limitations as to RFC. In the meantime, the parties briefed the class certification issues. Subsequently, on August 19, 2004, the Seventh Circuit entered Judgment on the interlocutory appeal stating:

> The petition for leave to appeal is GRANTED, limited to the claim under the Illinois Interest Act. With respect to that subject the decision is REVERSED, and the case is REMANDED with instructions to dismiss the complaint to the extent it relies on 815 ILCS 204/4.1a. The petition for leave to appeal otherwise is DENIED. The above is in accordance with the decision of this court entered on this date.

Thereafter, this Court, pursuant to the Seventh Circuit's August 19, 2004 Judgment,

---

1. Section 15 U.S.C. § 1641(d)(1) states in part: "Any person who purchases or is otherwise assigned a mortgage referred to in section 1602(aa) of this title shall be subject to all claims and defenses with respect to that mortgage that the consumer could assert against the creditor of the mortgage, unless the purchaser or assignee demonstrates, . . . that a reasonable person exercising ordinary due diligence, could not determine, based on the documentation required by this subchapter, the itemization of the amount financed, and other disclosure of disbursements that the mortgage was a mortgage referred to in section 1602(aa) of this title."

dismissed with prejudice the Illinois Interest Act claims and denied as moot Plaintiffs' motion for certification of Illinois Class (Doc. 71).

## II. *Class Certification*

■ In order to maintain a class action, the following prerequisites must be met: (1) the class is so numerous that Joinder of all members is impracticable; (2) that there are questions of law or fact common to the class; (3) the claims or defenses of the representative are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a). Class certification is appropriate under Rule 23(b)(3) where "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). In making these findings, the court should consider (1) the interest of members of the class individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. *Id.*

■ Plaintiffs bear the burden of demonstrating that certification is appropriate. *See Retired Police Ass'n v. City of Chicago,* 7 F.3d 584, 596 (7th Cir.1993). As a general principle, a court is not allowed to engage in an analysis of the merits to determine whether the case should be maintained as a class. *Id.* However, a district court must make a preliminary inquiry into the merits of the case if some of the considerations under Rule 23 overlap the merits. *Szabo v. Bridgeport Machs., Inc.,* 249 F.3d 672 (7th Cir.), cert. denied, 534 U.S. 951, 122 S.Ct. 348, 151 L.Ed.2d 263 (2001); *see also Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *Retired Chicago Police Ass'n,* 7 F.3d at 598–99 (not-

ing that in some cases, some discovery may be necessary to determine whether certification is appropriate and that "the boundary between a class determination and the merits may not always be easily ascertainable"); *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130,* 657 F.2d 890, 895 (7th Cir.1981). As Judge Easterbrook stated in Szabo, "[b]efore deciding whether to allow a case to proceed as a class action ... a judge should make whatever factual and legal inquiries are necessary under Rule 23." 249 F.3d at 676. Thus, this Court simply may not take Plaintiffs' allegations as true, for "[b]oth the absent class members and defendants are entitled to the protection of independent judicial review of the plaintiff's allegations." *Id.* at 677.

■ In their motion to certify national class, Plaintiffs seek to represent the following:

> All borrowers that were sold second mortgage loans from Mortgage Capital secured by real property anywhere in the United States, where the loan meets the definition of a high-cost mortgage set forth at 15 U.S.C. §§ 1602(aa), and were subsequently transferred or assigned to GMAC–RFC.

Plaintiffs contend that class certification of a national class is proper based on the allegation that each putative class member paid a $450 fee for closing services attributed to the Johnson & Payne law firm on every second mortgage loan made by Mortgage Capital even though the Johnson & Payne law firm did not perform any such services. Plaintiffs further contend that Mortgage Capital obtained all or some of the fee. Defendants argue that Plaintiffs' motion must fail because the record demonstrates that the Johnson & Payne law firm provided a variety of different closing and title services that varied depending on the individual circumstances of each particular loan transaction. The Court agrees.

The record contains testimony that demonstrates that the $450 fee was not a sham, but that the Johnson & Payne law firm provided services on every loan sent by Mortgage

Capital.[2] These declarations are from attorneys, Robert Payne, James A. Dooely, Robert Rivers, former attorneys with the Johnson & Payne law firm and the Johnson & Dooley law firm who performed work related to closing residential mortgage loan transactions. In addition, the record contains declarations from three former employees of the Johnson & Payne law firm, Rebecca Champaign. Sheila Elmore, and Janelle Soto, who worked on residential mortgage loan transactions. These declarations reveal that the Johnson & Payne law firm performed various services in connection with the making and the closing of Mortgage Capital loans and that such services varied from loan to loan.[3]

Based on the record, the Court finds that Plaintiffs failed to satisfy the commonality issue and, thus, failed to meet the requirements of Fed.R.Civ.P. 23(b)(3). Specifically, the Court finds that Plaintiffs' claims cannot be adjudicated on a class wide basis because each borrower's claims and various defenses hinge on individualized documentary and testimonial evidence. These individual issues will predominate over any questions of law or fact common to the proposed class, such that class action is not the superior method available for the fair and efficient adjudication of the controversy. In effect, the Court would have to conduct "mini" trials to determine the value of the services performed, the fees actually charged, whether such fees qualify as a finance charge, the amount of the fee, if any, remitted to Mortgage Capital and whether the inclusion of any overcharge in the calculation of the annual percentage rate would cause a material adjustment in the annual percentage rate. This places the Court in the position of considering each claimants' charges on a case by case basis. The Court rejects Plaintiffs' assertion that the Johnson & Payne fees only fit into the lump sum category. Because Plaintiffs have

not met the commonality issue, the Court need not address the other issues regarding class certification.

### III. *Conclusion*

Based on the reasons stated on the record during the January 6, 2005 hearing and the reasons stated herein, the Court **DENIES** Plaintiffs' motion for certification of national class (Doc. 35).

**IT IS SO ORDERED.**

---

2. Plaintiff does not offer any evidence to refute these declarations. In response, Plaintiffs assert that the declarations are duplicative and that they anticipate corrupting these declarations on cross examination. Based on this argument, a credibility issue was in store for the fact finder.

3. The declarations state that the services included: conduct closings in person and over the phone; reviewing and delivering loan documents, directing title searches and providing other title services; assuring that the documents of conveyance were in proper form; explaining the loan documents, terms of the loans, and closing process to the borrower; verifying the accuracy of the statements by the lenders in the loan documents; disbursing loan proceeds; and filing the mortgages with the appropriate county records offices; and distribution of loan proceeds.